

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

**NOV 1 8 2015**

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

HARLEY DAVIDSON TROTT, §
§
Petitioner, §
§
v. § No. 4:14-CV-355-A
§
WILLIAM STEPHENS, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
§
Respondent. §

### MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28
U.S.C. § 2254 filed by petitioner, Harley Davidson Trott, a state
prisoner incarcerated in the Correctional Institutions Division
of the Texas Department of Criminal Justice (TDCJ) against
William Stephens, Director of TDCJ, respondent. After having
considered the pleadings, state court records, and relief sought
by petitioner, the court has concluded that the petition should
be denied.

### I. Factual and Procedural History

On August 31, 2011, in the 432nd District Court of Tarrant
County, Texas, Case No. 1239719R, a jury found petitioner guilty
of aggravated robbery with a deadly weapon, a screwdriver, and

assessed his punishment at 16 years' confinement.  Adm. R.,

Clerk's R. 125, ECF No. 10-6.  Petitioner's judgment of

conviction was affirmed on appeal, and the Texas Court of

Criminal Appeals refused his petition for discretionary review.

*Id.*, Op., ECF No. 10-4.  Petitioner also sought post-conviction

state-habeas relief, but his state-habeas application was denied

by the Texas Court of Criminal Appeals without written order on

the findings of the trial court.  *Id.*, Writ Denied, ECF No. 10-

12.  The state-appellate court summarized the evidence as

follows:

> Trott and an accomplice walked into a liquor
> store.  Approximately twelve minutes later, they walked
> out without paying for a bottle of vodka concealed in a
> backpack.  Within minutes, Trott and his accomplice
> were spotted in the parking lot by a store employee,
> who alerted Steven Russell, the owner.  Russell
> confronted Trott in the parking lot and demanded that
> Trott return the bottle.  When Trott brandished an
> object that Russell believed was a knife, Rusell [sic]
> backed off and told Trott that he was calling the
> police, prompting Trott to flee.  Seven minutes after
> Trott and his accomplice walked out of the store, Fort
> Worth Police Officers Michael Sones and R.G. Bittinger
> were dispatched.  Shortly after arriving, Officer
> Bittinger captured Trott and recovered a screwdriver
> Trott dropped.

*Id.*, Op. 1-2, ECF No. 10-4.

## II.  Issues

Petitioner raises four grounds for habeas relief:

2

(1)    There is no evidence to show that he was in the
       immediate flight from a theft at the time of the
       "assaultive conduct," an essential element of the
       offense;

(2)    Appellate counsel was ineffective by failing to
       raise the meritorious issue "of the screwdriver
       allegedly exhibited not qualifying as a deadly
       weapon," an essential element of the offense;

(3)    The prosecutor engaged in vindictiveness by
       telling lies during closing statements in the
       guilt/innocence phase of trial and by
       misrepresenting "the credibility/validity of
       timestamps to [the] appellate court"; and

(4)    Trial and appellate counsel were ineffective by
       failing to address the state's lies during closing
       argument.

Pet. 6-7, ECF No. 1.

### III.   Rule 5 Statement

Respondent believes that, as he construes them, petitioner

has sufficiently exhausted his claims in state court and that the

petition is neither successive nor time-barred.   28 U.S.C. §

2244(b), (d).   Resp't's Answer 5, ECF No. 11.

### IV.   Discussion

#### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf

of a person in custody pursuant to the judgment of a state court

shall not be granted with respect to any claim that was

adjudicated on the merits in state court proceedings unless he

3

shows that the prior adjudication:   (1) resulted in a decision

that was contrary to, or involved an unreasonable application of,

clearly established federal law, or (2) resulted in a decision

that was based on an unreasonable determination of the facts in

light of the evidence presented in the state court.   28 U.S.C. §

2254(d).   A decision is contrary to clearly established federal

law if the state court arrives at a conclusion opposite to that

reached by the United States Supreme Court on a question of law

or if the state court decides a case differently than the Supreme

Court has on a set of materially indistinguishable facts.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).   A state court

decision will be an unreasonable application of clearly

established federal law if it correctly identifies the applicable

rule but applies it unreasonably to the facts of the case.   *Id.*

at 407-08.

     The statute further requires that federal courts give great

deference to a state court's factual findings.   Section

2254(e)(1) provides that a determination of a factual issue made

by a state court shall be presumed to be correct.   The petitioner

has the burden of rebutting the presumption of correctness by

clear and convincing evidence.   28 U.S.C. § 2254(e)(1).   When the

Texas Court of Criminal Appeals denies a federal claim in a state

4

habeas corpus application without written order, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Johnson v. Williams,* 133 S. Ct. 1088, 1094 (2013) (quoting *Harrington v. Richter,* 562 U.S. 86, 98-99 (2011)). With these principles in mind, the court addresses petitioner's claims.

### *No Evidence*

In his first ground, petitioner claims there was no evidence to show that he "was 'in the course of committing theft' namely 'in the immediate flight' from a theft at time of [the] alleged assaultive conduct." Pet. 6, ECF No. 1. A state prisoner's no-evidence claim is treated the same as a claim of insufficiency of the evidence. *Gibson v. Collins,* 947 F.2d 780, 782 (5th Cir. 1991). Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia,* 443 U.S. 307 (1979). In *Jackson,* the Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas-corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

have found the essential elements of the crime beyond a
reasonable doubt." *Id.* at 319.   To determine whether the
evidence is sufficient to support a state criminal conviction, a
federal habeas court looks to state law for the substantive
elements of the relevant criminal offense.   *Id.* at 324 n.16;
*Dupuy v. Cain,* 201 F.3d 582, 589 (5th Cir. 2000).

        Additionally, under *Jackson*, the assessment of the
credibility of witnesses is generally beyond the scope of review.
*Schlup v. Delo*, 513 U.S. 298, 330 (1995).   Determining the weight
and credibility of the evidence is within the sole province of
the jury.   *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir.
1992).   Courts view any required credibility determinations in
the light most favorable to the guilty verdict.   *United States v.
Wise*, 221 F.3d 140, 154 (5th Cir. 2000).   They do not second-
guess the weight or credibility given the evidence.   *United
States v. Ramos—Garcia*, 184 F.3d 463, 465 (5th Cir. 1999).
Finally, where a state-appellate court has conducted a thoughtful
review of the evidence, its determination is entitled to great
deference.   *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir.
1993).

        Applying the *Jackson* standard, and relevant state law, the

6

state-appellate court addressed Petitioner's claim as follows:

## Applicable Law

A person commits robbery if "in the course of committing theft" and "with intent to obtain or maintain control of the property," he "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." To prove aggravated robbery, the State must prove robbery plus an aggravating factor, such as the defendant "uses or exhibits a deadly weapon." The robbery element of "[i]n the course of committing theft" is defined as "conduct that occurs in an attempt to commit, during the commission, or *in immediate flight after the attempt or commission of theft*."

## Discussion

When viewed in the light most favorable to the verdict, the evidence adduced at trial was sufficient for the jury to reasonably conclude that Trott was in immediate flight from theft when he threatened Russell with the screwdriver.

The term "immediate flight" is not statutorily defined. However, the term "immediate" was recently defined by the Court of Criminal Appeals. In *Sweed v. State,* the Court held that the trial court erred by failing to give a lesser-included-offense instruction of theft in a case in which the appellant was charged with aggravated robbery. The central issue at trial was whether the appellant pulled a knife on the complainant during, or in immediate flight after, the commission of the theft. Recognizing that there is no statutory definition of "immediate flight" and relying upon Black's Law Dictionary, the Court defined "immediate" as "[o]ccurring without delay; instant," "[n]ot separated by other persons or things," or "[h]aving a direct impact; without an intervening agency." Because there was evidence in the record of a fifteen- to thirty-minute delay between the appellant's flight following his commission of the theft and the

7

appellant's use of the knife, as well as other intervening activities, the Court concluded that a rational inference existed that the appellant was no longer fleeing from the theft when he used the knife.

Here, there was no delay or intervening activity to break the nexus between Trott's flight from theft and his use of the screwdriver. As noted above, the jury heard testimony that Trott exited the liquor store approximately twelve minutes after entering it and that, minutes later, he was spotted in the parking lot where he was immediately confronted by Russell. The jury also heard testimony that seven minutes elapsed from the time that Trott walked out of the store to the time that two police officers were dispatched to the scene and that Trott threatened Russell with the screwdriver at some stage in this seven-minute period. Given these circumstances, the jury was justified in concluding that, when Trott brandished the screwdriver, he did so while in immediate flight from theft.

Trott asserts in his brief that "no rational trier of fact could have found . . . that [he] threatened [Russell] during an 'immediate flight' following the theft" because he drove away "[i]mmediately after the theft" only to be confronted by Russell "ten to fifteen minutes later" when he returned to the parking lot. Trott, however, does not direct us to, nor can we find, any evidence in the record to substantiate his claim that [he] left the parking lot in a car and returned. Indeed, Trott and his accomplice both testified that, after stealing the bottle, they walked across the street to a McDonald's restaurant where Trott remained a few minutes before walking to a supermarket. Trott does point to Russell's testimony that ten to fifteen minutes elapsed from the time that Trott left the store to the time that Russell encountered Trott in the parking lot as evidence that a relatively long period passed between the two events. However, as established above, the jury also heard testimony that Trott threatened Russell with the screwdriver a few minutes after stealing the vodka bottle. As the exclusive judge of the facts, the credibility of the witnesses,

8

and the weight to be given to the evidence, the jury
was free not only to accept the version of events
advocated by the State and to reject the one promoted
by Trott, but also to reject any part of Russell's
uncontradicted testimony.  That the jury chose to do so
in this case was its prerogative, and in conducting our
legal sufficiency review, we are prohibited from re-
evaluating the weight and credibility of the evidence
or substituting our judgment for that of the jury.

We conclude that the evidence is legally
sufficient to support the jury's verdict that Trott was
guilty of aggravated robbery because when Trott
threatened Russell with the screwdriver, he was in
immediate flight following his theft of the vodka
bottle.

Adm. R., Op. 3-6, ECF No. 10-4 (citations & footnote omitted)

(emphasis in original).

The state court's determination of the claim is a reasonable

application of *Jackson*.  As the factfinder, the jury was

responsible for determining the weight and credibility of the

evidence, resolving conflicts in the evidence, and choosing among

reasonable constructions of the evidence.  *United States v.*

*Moreno,* 185 F.3d 465, 471 (5th Cir. 1999).  This court cannot

substitute its view of the evidence for that of the factfinder.

*Alexander v. McCotter,* 775 F.2d 595, 598 (5th Cir. 1985).

### *Prosecutorial Vindictiveness*

In his third ground, petitioner claims that the state

prosecutor at trial engaged in misconduct during closing argument

9

in the guilt/innocence phase of his trial by lying and
exaggerating his co-defendant's 14-day confinement in the county
jail by stating that she just got out of prison and by omitting
the words "in the manner of its use or intended use" when
defining a deadly weapon, thereby wrongfully broadening "the
scope" of the statutory definition.  Pet. 7, ECF No. 1.
Petitioner also claims that the state-appellate prosecutor
engaged in misconduct by misrepresenting "the credibility/
validity of timestamps to [the] appellate court."  Pet. 7, ECF
No. 1.

    Relying on the documentary record and her recollection of
the trial proceedings, the state-habeas judge adopted the
following relevant factual findings on the issue:

    20.  The State argued a deadly weapon is an object
         "adapted for" and "capable of" causing bodily
         injury or death.

    21.  During closing arguments, the State stated as
         follows:

              And his girlfriend had just gotten
              out of prison in February.  His
              girlfriend, who stood up here and
              confessed to her part in this,
              she's a party to this crime.  She
              confessed to it.  But believe
              everything she says.

    22.  Applicant's co-defendant testified that she was
         convicted of a felony offense of forgery in 2010.

10

23. Before the State's guilt/innocence closing argument, there was no testimony regarding the punishment Applicant's co-defendant received.

24. During the punishment phase, the co-defendant testified that she received fourteen days in jail for the state jail felony offense.

25. Applicant's co-defendant testified that she and Applicant were at the liquor store at 4:00 p.m. when the timestamp on the surveillance video showed 7:38 p.m.

26. Applicant's co-defendant testified that they stayed at McDonald's for at least thirty-five minutes.

27. The police were dispatched at 7:57 p.m.

28. The co-defendant's testimony did not fit the time line presented by the surveillance video and the police records.

29. It is reasonable the jury found the co-defendant not credible based on her own testimony.

30. There is no evidence that Applicant was harmed by the State's argument that the co-defendant went to prison.

31. Applicant presents no authority to support his claim that the appellate prosecutor presenting the timestamps on the video as fact was improper.

32. Applicant's claim that the appellate prosecutor was not allowed to present the timestamps on the video or the testimony regarding the time as fact is without merit on its face.

Adm. R., Writ, No. WR-81,084-01 at 60-61 (record citations omitted).  Based on its findings, and relying on relevant state

law, the judge concluded-

> 35. The statute defines deadly weapon as . . . "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."
>
> 36. Because the State argued that a deadly weapon is an object "adapted for" and "capable of" causing serious bodily injury or death, the State's argument was proper.
>
> 37. A prosecutor may not present evidence that is outside the record during closing arguments. Improper argument is a non-constitutional error that must be disregarded if it "does not affect substantial rights."
>
> 38. Substantial rights are affected when the severity of the misconduct (with any curative measures) outweighs the certainty of the conviction absent the misconduct.
>
> 39. Applicant has failed to prove that his substantial rights were affected by the State arguing that his co-defendant had been to prison on her felony conviction when she had only been to jail.
>
> 40. Applicant has failed to prove that the appellate prosecutor could not represent testimony as fact in the State's brief.

*Id.* at 66-67 (citation omitted).

Improper jury argument by the state does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *Darden v. Wainwright,* 477 U.S. 168,

12

181 (1986).  To establish that a prosecutor's remarks are so inflammatory, the petitioner must demonstrate the misconduct is persistent and pronounced or the evidence of guilt was so insubstantial the conviction would not have occurred but for the improper remarks.  *Harris v. Cockrell,* 313 F.3d 238, 245 (5th Cir. 2002).

Here, the prosecutor's remark that Petitioner's co-defendant just got out of prison was isolated and the prejudicial effect of the comment was minimal in light of the substantial evidence of Petitioner's guilt.  Furthermore, the prosecutor's comment regarding the definition of "deadly weapon" was proper as a matter of state law.  This Court is required to defer to the state court's interpretation of state law.  *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).  Petitioner's final claim that the state-appellate prosecutor misrepresented "the credibility/validity of timestamps to [the] appellate court" is vague and inadequately briefed.  There is no evidence that the state misrepresented the facts on appeal or that the alleged misrepresentation impacted any of Petitioner's federal constitutional rights.

### *Ineffective Assistance of Counsel*

Petitioner was represented at trial by Brett Boone and on

appeal by Abe Factor.  In his second and fourth grounds,
Petitioner asserts that appellate counsel was ineffective by
failing to raise his meritorious claim that the screwdriver is
not a deadly weapon and that both trial and appellate counsel
were ineffective by failing to "address" the state's lies during
closing argument in the guilt/innocence phase of his trial.  Pet.
6-7, ECF No. 1.

A criminal defendant has a constitutional right to the
effective assistance of counsel at trial and on a first appeal as
of right.  U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S.
387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688
(1984); *Anders v. California*, 386 U.S. 738, 744 (1967).  An
ineffective assistance claim is governed by the familiar standard
set forth in *Strickland v. Washington*.  466 U.S. at 668.  To
establish ineffective assistance of counsel a petitioner must
show (1) that counsel's performance fell below an objective
standard of reasonableness, and (2) that but for counsel's
deficient performance the result of the proceeding would have
been different.  *Id.* at 688.

In applying this standard, a court must indulge a strong
presumption that counsel's conduct fell within the wide range of
reasonable professional assistance or sound trial strategy.  *Id.*

14

at 668, 688-89.   Judicial scrutiny of counsel's performance must

be highly deferential and every effort must be made to eliminate

the distorting effects of hindsight.   *Id*. at 689.   Where a

petitioner's ineffective assistance claims have been reviewed on

their merits and denied by the state courts, federal habeas

relief will be granted only if the state courts' decision was

contrary to or involved an unreasonable application of the

*Strickland* standard in light of the state court record.

*Harrington*, 131 S. Ct. at 785 (quoting *Williams v. Taylor,* 529

U.S. at 410); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).   Thus, a

federal court's review of state-court decisions regarding

ineffective assistance of counsel must be "doubly deferential" so

as to afford "both the state court and the defense attorney the

benefit of the doubt."   *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013)

(quoting *Cullen v. Pinholster,* 131 S. Ct. 1388, 1403 (2011)).

      Petitioner raised his claims in his state-habeas

application, and based on the record and her recollection of the

trial proceedings, the state-habeas judge entered findings of

fact refuting his claims and concluded that there was no evidence

that Petitioner was harmed by trial or appellate counsel's

omissions such that there is a reasonable probability that, but

for counsel's alleged acts of misconduct, the result of his trial

or appeal would have been different.  Adm. R., Writ, No. WR-81,084-01, 59, 61-68, ECF No. 10-11.  In light of the overwhelming evidence of Petitioner's guilt, the state court's determination of no prejudice was a reasonable application of *Strickland*.  *See Leal v. Dretke,* 428 F.3d 543, 549 (5th Cir. 2005); *Henderson v. Cockrell,* 333 F.3d 592, 602-03 (5th Cir. 2003).

For the reasons discussed herein,

The court ORDERS that the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.  For the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied.

SIGNED November ___18___, 2015.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE